E-FILED
Tuesday, 04 April, 2023   12:30:10 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID GARCIA,  Plaintiff, | ) ) ) |
| vs. | ) Case No. 22-1283 ) |
| SERGEANT DURBIN, et.al.  Defendants | ) ) ) |

CASE MANAGEMENT ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for case management and consideration of Plaintiff's Second Motion for Leave to File an Amended Complaint [30] and Motion for Appointment of Counsel. [31].

I. BACKGROUND

Plaintiff began this litigation claiming he was filing two complaints in the same lawsuit. [1, 8]. The filings were dismissed as a violation of Federal Rule of Civil Procedure 8, Plaintiff was given directions to assist in clarifying his claims and allowed additional time to file an amended complaint. *See* September 6, 2022 Text Order.

Plaintiff then submitted a 134-page Amended Complaint which was dismissed for failure to state a claim upon which relief could be granted and violations of Federal Rules of Civil Procedure 8, 18, and 20. *See* November 21, 2022 Case Management Order. Plaintiff did not provide adequate details to clearly state any constitutional violations. The Court reviewed the specific deficiencies in Plaintiff's filing and again provided instructions to assist Plaintiff in stating his intended claims.

1

For instance, Plaintiff was advised to state each claim only one time, and to clearly indicate what happened, when it happened, and who was involved. Plaintiff was advised he must provide some identifying information for any Doe Defendant. Plaintiff was further admonished he must not provide subparts, information pertaining to other inmates, or exhibits.

In addition, Plaintiff was advised he could not pursue unrelated claims against different defendants in one lawsuit. *See George v Smith,* 507 F.3d 605, 607 (7th Cir. 2007)("multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2). "For instance, Plaintiff cannot combine claims involving conditions at one correctional center against different defendants at another correctional center." November 21, 2022 Case Management Order, p. 6.

Finally, the Court explained why Plaintiff could not pursue his claims concerning the taking of his property and the grievance process, and what additional information was needed to state a claim based on a denial of access to the courts.

After some delay, Plaintiff has now filed his Motion for Leave to File a Second Amended Complaint which is granted pursuant to Federal Rule of Civil Procedure 15. [30].

## II. MERIT REVIEW

The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's Second Amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it

"(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff has identified the following Defendants: Sergeant Durbin, Dr. Vipin Shah, Wexford's Medical Director Dr. Paul, Pontiac Nurse Doe #1, Health Care Unit (HCU) Administrator Doe #2, Grievance Officer Doe #3, Correctional Officer Sims, Supervisor Doe #5, and Administrative Review Board Members Sherry Benton and Clayton Stephenson. The Court notes Plaintiff chose not to pursue any claims against Defendant Doe #4.

Plaintiff has ignored many of the Court's specific directions. For instance, Plaintiff again says the events alleged in his complaint "occurred mainly at Pontiac Correctional Center with some overlap at Centralia Correctional Center." (Sec.Amd. Comp., p. 9). In addition, the 105-page complaint again includes exhibits and subparts. Consequently, the Court will only consider claims identified in the complaint, not potential claims in the "exhibits." (Sec.Amd.Comp., p. 53-105).

Plaintiff's Second Amended Complaint focus on three specific events:

EVENT #1: The first event concerns Plaintiff's medical care. In the summer of 2019, Defendant Dr. Shah met with Plaintiff and ordered a series of blood tests. Plaintiff claims the Defendant did not inform Plaintiff he had a very high "Hepatitis B viral count" until December of 2019. (Sec.Amd.Comp., p. 10). Dr. Shah informed Plaintiff Defendant Dr. Paul would take over his case since she was the hepatitis specialist for Pontiac Correctional Center inmates.

3

In January of 2020, Plaintiff met with a nurse during sick call and she advised Plaintiff Defendant Dr. Paul had ordered another round of blood work. The test was done, but Plaintiff says he never met or saw Defendant Dr. Paul. Plaintiff further claims neither Dr. Shah, nor Dr. Paul ever informed Plaintiff he also had Hepatitis A.

Plaintiff says he received no other care for hepatitis from either Defendant and he continues to face serious medical consequences as a result.

Plaintiff maintains he should have been scheduled for a further appointment and he believes nurses would be responsible for that scheduling. Therefore, he has added Defendant Nurse Doe #1. However, Plaintiff has not provided any factual basis for a claim against this Doe Defendant other than his own hunch. Therefore, Plaintiff has not stated a claim against a Nurse Jane Doe based on the limited information provided in his complaint. The Court will dismiss Defendant Nurse Doe #1.

Plaintiff has also named Grievance Officer Doe #3; ARB members Benton and Stephenson; and HCU Administrator Doe #2 because he filed grievances, and they took no action to "correct the situation." (Sec.Amd.Comp., p. 27). None of the Defendants provide direct medical care to inmates.

"Non-medical officials are presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care.'" *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021)(internal quotation omitted). However, a "plaintiff may rebut this presumption by showing (defendants) had reason to know that their medical staff were failing to treat or inadequately treating an inmate." *Eagan,* 987 F.3d at 694 (internal quotation omitted).

4

Plaintiff claims Defendants Benton, Stephenson, Grievance Officer Doe #3, and HCU Administrator Doe #2 knew he was not receiving any medical care for hepatitis A and B, but they failed to follow up or take any other action. Therefore, Plaintiff has articulated an Eighth Amendment claim against Defendants Dr. Shah, Dr. Paul, HCU Administrator Doe #2, Grievance Officer Doe #3, and ARB Members Benton and Stephenson. Plaintiff claims the Defendants were deliberately indifferent when they denied or delayed medical care for hepatitis A and B.

EVENT #2: The second event occurred in July of 2021 at Pontaic Correctional Center. Plaintiff says the facility was on lockdown due to a "disciplinary event." (Sec.Amd. Comp., p. 13). On July 29, 2021, Plaintiff was housed in East House when several tactical teams entered the gallery. Plaintiff and the other inmates were strip searched and moved to the chow hall while tact teams searched each cell. When Plaintiff and his cell mate returned, their belongings were mixed together on the bunk beds and Defendant Sergeant Durbin left a shakedown slip.

Plaintiff says several of his personal papers including grievances, receipts, and court papers were missing. In addition, many of his personal items were damaged or removed. Plaintiff says Defendant Sergeant Durbin was responsible for the search of his specific cell. However, Plaintiff believes an unknown supervisor, Defendant Doe #5, may also be responsible.

Plaintiff claims taking his legal papers denied him access to the courts. As previously explained, a prisoner's fundamental right of access to the courts is violated only when an inmate is both deprived of access and suffers an actual injury as a result.

*See Lewis v. Casey*, 518 U.S. 343, 350 (1996).  Plaintiff now claims the injury occurred when Defendants took a copy of the complaint he had drafted against Defendant Dr. Paul, which prevented him from filing it "in a timely manner." (Sec.Amd.Comp., p. 29-30).  However, "a delay becomes an injury only if it results in actual substantial prejudice to specific litigation." *Johnson v. Barczak*, 338 F.3d 771, 773 (2003) (quotation mark omitted). Plaintiff has not alleged he was prevented from pursuing a non-frivolous claim.  In fact, Plaintiff has included his claims against Defendant Dr. Paul in the current complaint.  Therefore, Plaintiff has not articulated a claim based on a denial of access to the Courts.

Plaintiff also has failed to state a claim based on taking or damaging his personal property. Again, the Court previously explained Plaintiff must establish a deprivation of liberty or property without due process to establish a Fourteenth Amendment claim. "However, if the state provides an adequate remedy, Plaintiff has no civil rights claim." *Stevens v. Norwood*, 2020 WL 6321487, at *1 (S.D.Ill. Oct. 28, 2020), *citing Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). "Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims." Stevens, 2020 WL 6321487, at *1; *citing Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999)("A prisoner has adequate process where an adequate post-deprivation remedy is available to redress unauthorized confiscations of property.").

In addition, Plaintiff does not have a Fourth Amendment right to prevent the search of his cell and property.  The Supreme Court has explicitly held the Fourth

6

Amendment's prohibition of unreasonable searches and seizures does not apply to those conducted "within the confines of a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *see also Cannon v. Newport,* 723 F. App'x 344 (7th Cir. 2018).

Plaintiff next alleges Defendants took his property in retaliation for his "continuous submission of grievances" and his higher than usual bill at the prison library. (Sec.Amd.Comp., p. 31). To state a claim, a plaintiff must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Plaintiff's grievances are a protected activity, his library bill is not. Plaintiff has adequately alleged Defendant Durbin retaliated against him when he took or damaged his property at Pontiac based on his grievances.

While Plaintiff assumes there was also a supervisor during the tact team searches, he has not provided a factual basis for a claim based on the alleged supervisor's personal involvement. In addition, the mere fact that a defendant was a supervisor is insufficient to establish liability because the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under 42 USC §1983. See *Smith v. Gomez*, 550 F.3d 613, 616 (7th Cir. 2008)(supervisor liability not permitted under § 1983); *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992)(supervisors are not liable for the errors of their subordinates).

7

Plaintiff next claims Defendants Grievance Officer Doe #3, and ARB Members Benton and Stephenson retaliated against him because they knew about Defendant Durbin's retaliatory actions and took no action to return his property and papers. Taking the evidence in the light most favorable to Plaintiff, he has articulated a First Amendment claim against these Defendants.

Plaintiff also includes other vague and unclear claims based on taking his property, but he fails to clearly articulate any other constitutional violations. For instance, taking copies of medical grievances from his cell is not a violation of the Eighth Amendment.

Plaintiff has articulated one claim based on Event #2: Defendant Durbin, Grievance Officer Doe #3, and ARB Members Benton and Stephenson violated Plaintiff's First Amendment rights when they took or damaged Plaintiff's property on July 29, 2021 in retaliation for his grievances.

EVENT #3: Plaintiff was transferred to Centralia Correctional Center on February 9, 2022. On May 31, 2022, several tact teams entered Plaintiff's housing unit. Once again, inmates were strip searched and removed from their cells while officers searched the area. Plaintiff and his cellmate's belongings were again thrown onto the bunk beds and Defendant Sims left a shakedown slip. Plaintiff says all of his pens were taken and some items were damaged.

Plaintiff again attempts to claim several constitutional violations based on this action. For the reasons previously stated, Plaintiff has again failed to articulate any claim. In addition, Plaintiff has also failed to allege Defendant Sims' actions were

motivated by retaliation, nor did he identify any specific protected activity at Centralia. (Sec.Amd.Comp., p. 31-22). Even if Plaintiff had articulated a claim, he could not combine his unrelated claim against Defendant Sims at Centralia Correctional Center with either of his other claims involving different Defendants and incidents at Pontiac Correctional Center. *See George,* 507 F.3d at 607. Therefore, the Court will dismiss any claims based on taking or damaging Plaintiff's property at Centralia.

Finally, the Court notes in addition to damages, Plaintiff ask for his release from prison. Plaintiff cannot seek his release from custody in a lawsuit pursuant to §1983. *See Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973)("when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). Therefore, Plaintiff cannot seek his release from custody in this lawsuit.

Plaintiff may proceed with the following claims:

1) Defendants Dr. Shah, Dr. Paul, HCU Administrator Doe #2, Grievance Officer Doe #3, and ARB Members Benton and Stephenson violated Plaintiff's Eighth Amendment rights when they denied or delayed medical care for hepatitis A and B.

2) Defendant Durbin, Grievance Officer Doe #3, and ARB Members Benton and Stephenson violated Plaintiff's First Amendment rights when they took or damaged Plaintiff's property on July 29, 2021 in retaliation for his grievances.

Plaintiff has had multiple opportunities to clarify his claims. The Court will not allow any further motions to amend without specific good cause show. This case is ready to proceed to service of Defendants and then discovery.

III. MOTION FOR COUNSEL

Plaintiff has filed a motion for appointment of counsel.[31]. Plaintiff has no constitutional right to the appointment of counsel. In addition, the Court cannot require an attorney to accept pro bono appointment in a civil case. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992).

In considering Plaintiff's motion, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).

Plaintiff has demonstrated an attempt to find counsel on his own. Plaintiff says he has some mental health issues, but it is not clear he suffers from any condition which would prevent him from litigating his claims. While Plaintiff says he has no legal experience, he has taken some college level courses. In addition, Plaintiff's case is now limited to two surviving claims. While one claim involves medical care, Plaintiff will be able to describe his condition, his efforts to obtain medical care, and the responses he received. In addition, Plaintiff will be able to obtain relevant medical records during discovery.

Throughout his motion, Plaintiff's main argument is a good attorney would do a better job litigating his claims.

Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014).

Ultimately "[t]he question is not whether a lawyer would present the case more effectively than the *pro se* plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant." *Pruitt,* 503 F.3d at 655 (internal quotation omitted). Instead, the test is whether the litigant is competent to litigate his own claims. *Id.*

At this stage of the litigation, the Court finds Plaintiff is competent to litigate his case and his motion is denied. [30].

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the Second Amended Complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges: a) Defendants Dr. Shah, Dr. Paul, HCU Administrator Doe #2, Grievance Officer Doe #3, and ARB Members Benton and Stephenson violated Plaintiff's Eighth Amendment rights at Pontiac C.C. when they delayed or denied all medical care for Plaintiff's hepatitis A and B; and b) Event #2: Defendant Durbin, Grievance Officer Doe #3, and ARB Members Benton and Stephenson violated Plaintiff's First Amendment rights when they took or damaged Plaintiff's property on July 29, 2021 at Pontiac in retaliation for his grievances. The claims are stated against the Defendants in their individual capacities only. Any additional claims shall not be included in

the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Grant Plaintiff's Motion for Leave to File a Second Amended Complaint, [30]; 2) Defendants Durbin and Dr. Paul are already named as Defendants. Therefore, the Clerk is to add Defendants Dr. Vipin Shah, Pontiac Health Care Unit (HCU) Administrator Doe #2, Grievance Officer Doe #3, and Administrative Review Board Members Sherry Benton and Clayton Stephenson. Any other intended Defendants are dismissed for failure to state a claim upon which relief can be granted; 3) Deny Plaintiff's motion for appointment of counsel, [31];** 4) **Attempt service on Defendants pursuant to the standard procedures; 5) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 6) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 4th day of April, 2023.


s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE